UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Thea Broadus[1]

v.　　　　　　　　　　　　　　　　　　Civil No. 18-cv-1079-JD
　　　　　　　　　　　　　　　　　　　Opinion No. 2019 DNH 077
Infor, Inc.

O R D E R

Thea Broadus filed this employment discrimination lawsuit against Infor, Inc., alleging racial discrimination, and retaliation and a state claim for tortious interference with a contract. Infor filed counterclaims for breach of contract (Count I); breach of duty of loyalty (Count II); fraud (Count III); unjust enrichment (Count IV); and conversion (Count V). Broadus moves to dismiss Counts I, II, III, and V of Infor's counterclaims. Infor opposes dismissal.

Standard of Review

In considering a motion to dismiss, the court accepts all well-pleaded facts as true and resolves all reasonable inferences in the non-moving party's favor. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

---

[1] The plaintiff filed a complaint under the name "Thea Griggs." In her amended complaint, she proceeds under the name "Thea Broadus."

The court disregards conclusory allegations that simply parrot the applicable legal standard. Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013). To determine whether a complaint survives a motion to dismiss, the court should use its "judicial experience and common sense," but should also avoid disregarding a factual allegation merely because actual proof of the alleged facts is improbable. Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

## Background

Thea Broadus was employed as an "account executive" with Infor, which develops and sells software related to the healthcare industry. Broadus, whose responsibilities as an account executive were focused on selling healthcare software, was paid through a "Variable Compensation Plan." Broadus primarily worked from home.

When she became employed with Infor, Broadus signed a "Nondisclosure, Noncompetition and Developments Agreement" (the "NND Agreement"). The NND Agreement prohibited Broadus from working for another company while she was employed with Infor. It also prohibited her from seeking or accepting employment with an Infor competitor for one year after her last day of employment with Infor. She was required under the agreement to

notify Infor, in writing, within five days of accepting employment with an Infor competitor.  The NND Agreement also contains a forum selection clause that states the following:

> I [Broadus] irrevocably: (a) submit to the exclusive jurisdiction of the state and Federal courts in Georgia (collectively, the "Courts") over any dispute, suit, action or proceeding arising out of or relating to this Agreement (individually, an "Agreement Action") and irrevocably select such Courts as the sole and exclusive venue for any Agreement Action . . . .

NND Agreement, doc. 10-1 ¶ 13.

In "late April and early May 2018," Infor announced a "typical" yearly "restructuring" of its sales team. Counterclaims, doc. 10 at 14, ¶ 26.  On May 11, Infor told Broadus, whom Infor alleges had not been performing well in her account executive position, that she would have 60 days to find another role with Infor.[2]

Infor alleges that it "extended this deadline on two occasions," but it does not indicate when it did so or for how long.  Between May 2018 and August 2018, Broadus exchanged "numerous emails" about potential positions with Infor's human resources department.

In June 2018, however, Broadus accepted a sales position with Oracle, one of Infor's competitors in the software

---

[2] Broadus alleges that Infor terminated her employment.

3

industry.  Broadus did not provide Infor with written notification of her new position.  Nevertheless, between June and August 2018, Broadus accepted "approximately" $30,000 of "base salary payments" from Infor.  Counterclaims, doc. 10 at 15, ¶ 30(c)-(d).  Broadus also "use[d] and access[ed] her Infor email account and Infor's internal online system" while employed with Oracle.  Id. ¶ 30(b).

Broadus had used the last name "Griggs" as an Infor employee, signing, for example, the NND Agreement with that name.  Doc. 10-1 at 5.  Broadus, however, also provided Infor with a tax document that indicated that she alternatively used the last name "Broadus".  Doc. 24-1.[3]  When Broadus accepted employment with Oracle, she used the last name "Broadus".  Infor faults Broadus for using two different last names, describing "Thea Broadus" as an "alias" that she used to further her "unlawful scheme" of "clandestine employment" with Oracle.  Counterclaims, doc. 10 at 15, 18, ¶¶ 30(b), 49.

In Count I of its counterclaims, Infor alleges that Broadus breached the NND Agreement by accepting employment with Oracle

---

[3] At the motion to dismiss stage, the First Circuit permits the consideration of "documents—the authenticity of which is not challenged—that are central to the plaintiff's claim or sufficiently referred to in the complaint . . . ." Carrero-Ojeda v. Authoridad deEnergia Electrica, 755 F.3d 711, 717 (1st Cir. 2014).

4

in June 2018 despite the noncompete clause; by accepting salary payments between June 2018 and August 2018; and by failing to provide written notification to Infor about her employment with Oracle. In Count II, Infor alleges that Broadus breached her "duties of loyalty and honesty, and a duty to exercise the utmost good faith and loyalty in the performance of her duties" by accepting employment with Oracle; by accepting salary payments between June 2018 and August 2018; and by "taking actions that could damage the goodwill and reputation of Infor."

In Count III, Infor alleges that Broadus committed fraud by failing to disclose that she accepted employment with Oracle; by failing to disclose that she had stopped seeking another position with Infor; and by suppressing that she had used the name "Thea Broadus." Infor alleges that it relied on Broadus's material omissions or misstatements by continuing to make salary payments to her through August 2018 and by extending her unspecified employee benefits. In Count V,[4] Infor alleges that Broadus knowingly misled Infor to make base salary payments between June and August 2018 and that Broadus improperly took those payments and converted them to her own use.

---

[4] Broadus did not move to dismiss Count IV, which alleges unjust enrichment.

Discussion

Broadus argues that the court must dismiss Count I because the NND Agreement contains an exclusive forum clause; that Count II must be dismissed because a nonmanager does not have a duty of loyalty; that Count III must be dismissed because Infor fails to state a claim upon which relief can be granted; and that Count V must be dismissed because a claim for conversion cannot be based on money.  Infor responds that Broadus's motion to dismiss is untimely; that it would be unreasonable to honor the forum selection clause; that Broadus held a position of trust and confidence; that the fraud claim is sufficiently pleaded; and that salary payments can be subject to a conversion claim. Broadus replied,[5] and Infor filed a surreply.

### A. Timeliness

Infor asserts that Broadus's motion to dismiss is untimely and should not be considered because she filed it after receiving permission to file only an untimely Answer, not an untimely motion to dismiss.  Under the discovery plan, however,

---

[5] Broadus's motion to file an untimely reply (doc. no. 23) is granted.

the deadline for motions to dismiss is June 24, 2019.  Doc. 21 at 1.  Therefore, Broadus's motion to dismiss is not untimely.

B.   Breach of Contract (Count I)

Broadus argues that the court must dismiss Infor's breach of contract claim because the NND Agreement requires a breach of contract claim to be brought in Georgia courts.  Infor argues that it would be "unreasonable and unjust" to enforce the forum selection clause because it would "result in duplicative litigation in two fora and the potential for inconsistent results."  Doc. 22 at 4.

Infor does not dispute that the forum selection clause in the NND Agreement is mandatory or that Count I falls within its scope.  In these circumstances, a party seeking to overcome a forum selection clause must make a "strong showing that it should be set aside." Carter's of New Bedford, Inc. v. Nike, Inc., 790 F.3d 289, 292 (1st Cir. 2015) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 15 (1972)).  "A strong showing can exist where: (1) the clause is the product of fraud or overreaching; (2) enforcement is unreasonable and unjust; (3) its enforcement would render the proceedings gravely difficult and inconvenient to the point of practical impossibility; or (4) enforcement contravenes 'a strong public policy of the forum in

which the suit is brought, whether declared by statute or judicial decision.'" Id. (quoting Huffington v. T.C. Grp., LLC, 637 F.3d 18, 23 (1st Cir. 2011)).

As Infor discussed in its response to Broadus's motion to dismiss, enforcing the forum selection clause in the NND Agreement in the way requested by Broadus would create a strong likelihood of inconsistent results or a race to a obtain a judgment. Given those unique circumstances, it would be unreasonable and unjust to enforce this forum selection clause by dismissing Count I.

### C. Breach of Loyalty (Count II)

Broadus argues that Infor failed to plead sufficient facts showing that she had a duty of loyalty to Infor. She contends that under White v. Ransmeier & Spellman, 950 F. Supp. 39 (D.N.H. 1996), nonmanagers do not owe a duty of loyalty to their employers. Infor responds that the existence of managerial responsibilities is only one factor in determining whether an employee owes a duty of loyalty to the employer.

Under New Hampshire law, "an employee holding a position of trust and confidence, such as a supervisor, manager, director, or officer, owes a fiduciary duty of loyalty to her employer." White, 950 F. Supp. at 43 (D.N.H. 1996) (quoting Liberty Mutual

Ins. v. Ward, 1994 WL 269283 (D.N.H. 1994)); PC Connection, Inc. v. Price, 2015 WL 6554546, at *7-*8 (D.N.H. Oct. 29, 2015). Behavior that would violate that duty "could include misappropriating a business opportunity of the employer, use of confidential information, or soliciting clients for the employee's competing business." White, 950 F. Supp. at 43.

Infor alleges that Broadus misappropriated confidential material entrusted to her because of her position as an account executive. Even though Broadus was an at-will, nonmanagerial employee like the counterclaim defendant in White, the allegations here suggest that Broadus held a position of trust and confidence. Therefore, Broadus has not shown that Count II of Infor's counterclaims fails to state a cognizable claim for relief.

D. Fraud (Count III)

Broadus argues that Infor's fraud claim should be dismissed because Infor failed to plead any fraudulent misrepresentations with sufficient particularity; because her omissions cannot support a claim for fraud; and because her use of her legal name, Thea Broadus, in obtaining employment with Oracle is not a plausible basis for the fraud claim. Infor responds that it has alleged sufficient facts to support its fraud claim.

9

Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13-14 (1st Cir. 2009). The particularity standard is satisfied if a plaintiff alleges the "who, what, where and when of the allegedly false or fraudulent representation." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004).

In New Hampshire, fraudulent misrepresentation requires proof of (1) a knowing misrepresentation of a false material fact; (2) a fraudulent intent; (3) the claiming party's justifiable reliance on the misrepresentation; and (4) damages caused to the claimant by that reliance. Obi v. Exeter Health Res., Inc., 2018 WL 5557062, at *4 (D.N.H. Oct. 2, 2018), report and recommendation adopted, 2018 WL 5456503 (D.N.H. Oct. 27, 2018). An "intentional concealment of a material fact," as opposed to an affirmative misrepresentation, can be fraud if the concealing party had a duty to disclose "arising from the relation of the parties[.]" Id.; see also Lamprey v. Britton Const., Inc., 163 N.H. 252, 263 (2012).

New Hampshire prohibits recovery in tort for breaches of contract. Lawton v. Great Sw. Fire Ins. Co., 118 N.H. 607, 615 (1978). Therefore, a fraud-by-omission claim must be premised

on a duty to disclose arising from a source independent of a contractual duty. See id. at 614 ("In this jurisdiction, a breach of contract standing alone does not give rise to a tort action."); Ruivo v. Wells Fargo Bank, N.A., 2012 WL 5845452, at *4 (D.N.H. Nov. 19, 2012).

In its counterclaims, Infor alleges that Broadus remained an Infor employee during the reorganization period from May to August 2018. During that time, she inquired about what other positions were available at Infor. She also continued to use her Infor email account and Infor's internal online system.

At the same time, Broadus accepted a job at Oracle, Infor's competitor. She used the name "Broadus" with Oracle, while she was known as "Griggs" at Infor. She did not disclose to Infor that she was working for Oracle. Broadus also continued to accept base salary payments from Infor while she was working at Oracle, which total "approximately" $30,000.

Infor fails to allege what non-contractual relationship between Infor and Broadus gave rise to a duty to disclose these facts. See Sec. & Exch. Comm'n v. Durgarian, 477 F. Supp. 2d 342, 350 (D. Mass. 2007) (finding that complaint with securities fraud claim that included duty to disclose as an element failed to allege sufficiently detailed facts from which a duty to disclose could arise); Vandegrift v. American Brands Corp., 572

11

F. Supp. 496, 499 (D.N.H. Sept. 21, 1983) ("The breach of an at-will employment contract standing alone would not normally give rise to a tort action . . . . [A]bsent some positive duty which the law imposes, the contract imposes no tort liability."). Therefore, Infor has not stated a cognizable claim about the circumstances that it alleges constitute fraud.

E. Count V (Conversion)

Infor alleges that Broadus received and converted "approximately" $30,000 in "salary payments," which she has failed to return. Counterclaims, doc. 10 at 15, 19, ¶¶ 30(d), 56-57. Broadus argues that she cannot "convert" money because conversion, under New Hampshire law, only applies to "chattel," which excludes money. Infor responds that courts "routinely allow conversion claims where the subject matter of the conversion is money." Doc. 22 at 11.

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Garod v. Steiner Law Office, PLLC, 170 N.H. 1, 6-7 (2017) (quoting Kingston 1686 House, Inc. v. B.S.P. Transp., Inc., 121 N.H. 93, 95 (1981)). Money can be a proper subject of a conversion

claim.  Giles v. Merritt, 59 N.H. 325 (1879) ("The appropriation of the money to her own use by the defendant was a conversion . . . ."); see also In re BeaconVision, Inc., 340 B.R. 674 (D.N.H. 2006) (denying defendant's motion for summary judgment on claim premised on conversion of $150,000 money deposit). Therefore, Broadus has not shown that Infor's conversion claim fails to state a cognizable claim for relief.

## Conclusion

For the foregoing reasons, Broadus's motion to dismiss (doc. no. 20) is granted in part and denied in part.  Broadus's motion to file an untimely reply (doc. no. 23) is granted. Count III of the counterclaims is dismissed.  The remaining counterclaims are Counts I, II, IV, and V.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

May 6, 2019

cc:   Megan E. Douglass, Esq.
      Benjamin T. King, Esq.
      Thomas E. Lent, Esq.
      Steven D. Weatherhead, Esq.